**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| PATRICK RYAN SMITH,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON COUNTY, JEFF COFFEY, CAPTAIN BREEDEN, KATIE ROBERSON, PHILLIP GABBARD, LADONNA HUBBARD, DR. VALJI, SHANNA JONES, STACY HOLBEIN, and TURNKEY HEALTH, LLC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:26-CV-269-DCLC-MJD |

**MEMORANDUM & ORDER**

Pro se prisoner Plaintiff, Patrick Ryan Smith, has filed a complaint under 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion [Doc. 1]; permit Plaintiff's medical-care claims to **PROCEED** against Ladonna Hubbard, Jefferson County, and Turnkey Health, LLC; and **DISMISS** all remaining claims and Defendants.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion and accompanying documents [Doc. 1] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee 37402 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only

when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the requirements for payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

**B. Allegations of Complaint**

On or about September 10, 2025, Plaintiff was transferred from the Sevier County Jail to the Jefferson County Jail as a pretrial detainee[1] [Doc. 2 p. 7]. At the time, Plaintiff was taking a prescribed 16 mg dose of suboxone per day to treat his opioid use disorder [*Id.*]. He had also been prescribed asthma medications and treatment for testosterone replacement therapy [*Id.*]. And although Plaintiff's medications were transported with him, Plaintiff was denied multiple doses of the medications during the intake process despite his requests for the medications [*Id.*]. As a result, Plaintiff suffered "significant withdrawal symptoms[,]" including physical and emotional pain [*Id.* at 8].

Turn Key Health Nurse Practitioner Ladonna Hubbard and other medical staff knew of Plaintiff's "testosterone deficiency [and] other medical conditions but refused to provide treatment[,]" instead relying on Jail policies or medication restrictions to deny care [*Id.*].

On or about September 27, 2025, Nurse Stacy Holbein "provided false or misleading information concerning Plaintiff[']s prescribed suboxone" following a drug-screening incident, which resulted in Plaintiff "being treated as a suspected participant in medication diversion" [*Id.*]. Plaintiff was placed in segregation as a result and his suboxone was discontinued or withheld for several days without the procedural protections required before disciplinary punishment or segregation [*Id.* at 8–9]. Plaintiff then suffered severe withdrawal symptoms [*Id.* at 9].

"Plaintiff alleges that Defendants Breeden, Roberson, Gabbard, Holbein, Hubbard, Jones, [and] Valji knew of his serious medical condition [and] the risks associated with abruptly

[1] Plaintiff was convicted on or about October 22, 2025 [Doc. 2 p. 7].

withholding his prescribed medication but failed to protect him or provide constitutionally adequate medical care" [*Id.*].

Plaintiff maintains he also had to endure other unconstitutional conditions, such as sleeping on a concrete floor "without a proper mattress" during intake, being denied "adequate clothing [and] hygiene items," and "at times being denied reasonable access to his prescribed inhalers [and] necessary legal resources" [*Id.*]. Some of these actions were retaliation for Plaintiff's grievances and lawsuits [*Id.* at 10].

Alleging inadequate medical care, unconstitutional conditions of confinement, retaliation, and procedural due process violations in this action, Plaintiff brings individual-capacity claims against Defendants Captain Breeden, Sergeant Katie Roberson, Lieutenant Phillip Gabbard, Nurse Practitioner Ladonna Hubbard, Nurse Shanna Jones, and Nurse Stacy Holbein; *Monell*[2] claims against Jefferson County and Turnkey Health; and individual-capacity and official-capacity claims against Sheriff Jeff Coffey and Dr. Valji [*Id.* at 6, 10]. Plaintiff seeks monetary relief [*Id.* at 11].

### C. Analysis

#### 1. Conditions of Confinement

Plaintiff alleges that Defendants were deliberately indifferent with regard to the physical conditions under which he was confined, namely, sleeping on a concrete floor "without a proper mattress" during intake and being denied "adequate clothing [and] hygiene items" [Doc. 2 p. 9].

But only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" violate a prisoner's rights. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). When examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose anyone

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Rhodes*, 452 U.S. at 347.

The deprivation of "a proper mattress" for a brief period of time, in the absence of physical injury, does not give rise to a constitutional claim. *See Bodman v. Dennis*, No. 14-1316, 2015 WL 13927074, at *2 (6th Cir. Mar. 31, 2015) (holding that being "required to sleep on a pallet on the floor and not allowed a shower for eight days" does not violate the Eighth Amendment); *Schroeder v. Kaplan*, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (requiring prisoner to sleep on floor for a four-week period without use of mattress does not violate the Eighth Amendment). Plaintiff does not allege that he experienced any physical injury because he did not receive a "proper mattress" during intake, and therefore, this allegation fails to state a claim.

Neither does Plaintiff disclose any facts that would permit the plausible inference that the alleged "[in]adequate clothing [and] hygiene items[,]" presumably during the intake process, deprived him of a constitutionally protected interest. *Miller v. Palmer*, No. 99-2352, 2000 WL 1478357, at *2 (6th Cir. Sept. 27, 2000) (holding denial of clean linens for a short period of time does not constitute Eighth Amendment violation). The Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time' . . . is not actionable conduct." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000)); *see also Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (holding inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state claim).

Therefore, Plaintiff's allegations are insufficient for the Court to plausibly infer that he was subjected to unconstitutional conditions-of-confinement, and these claims will be **DISMISSED**.

### 2. Access to Courts

Plaintiff also alleges that he was, at times, denied "reasonable access to . . . necessary legal resources" [Doc. 2 p. 9]. But Plaintiff has not alleged that he was prevented from pursing a legal claim, or that he lost the ability to pursue some avenue of relief due the alleged denial. Therefore, these allegations fail to state a claim upon which relief may be granted. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding inmate claiming lack of access must demonstrate his prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation."). This claim will be **DISMISSED**.

### 3. Retaliation

Plaintiff next maintains that "some of these actions were taken in retaliation for his grievances, lawsuits, [and] communications with federal courts concerning his conditions of confinement [and] medical treatment" [Doc. 2 p. 10]. To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff's complaint is completely devoid of any allegations that would permit the inference that he was denied constitutionally adequate conditions because he filed grievances and/or a lawsuit. In fact, Plaintiff complains that his maltreatment began in intake, when he presumably had not filed any grievances or lawsuits concerning his treatment at the Jefferson County Jail. Thus, Plaintiff has made only "conclusory allegations of retaliatory motive

'unsupported by material facts[.]" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). His allegations are therefore insufficient to state viable a retaliation claim, and this claim will be **DISMISSED**.

**4. Procedural Due Process**

Plaintiff alleges that on or about September 27, 2025, Defendant Holbein "provided false or misleading information concerning Plaintiff[']s prescribed suboxone" and that he was "treated as a suspected participant in medication diversion" [Doc. 2 p. 8]. As a result, Plaintiff was placed in segregation as a disciplinary sanction, and his suboxone was discontinued for several days [*Id.* at 8–9].

A plaintiff seeking to establish a procedural due process violation must plausibly allege the deprivation of a liberty interest and that the deprivation occurred without the due process owed to him. *Wilkinson v. Austin*, 545 U.S. 209, 221, 224 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake"). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest generating due process rights does not arise from "mandatory" language in prison policies; instead, its existence is determined by the disciplinary punishment imposed. *Id*. at 484. The *Sandin* Court held that a liberty interest under the Due Process Clause arises only if the disciplinary punishment imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

Plaintiff's allegations fail to implicate a protected due process right. First, Plaintiff does not disclose what his punishment entailed, other than placement in segregation. Accordingly, the Court presumes that he did not lose any good-time credits, which would have required particular

due process protections. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539 (1974). Instead, it appears that he was merely placed in segregation. And the Sixth Circuit has noted that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship' "); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

Further, inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff*, 418 U.S. at 564–71. This is true even if the charge later turns out to be unfounded. *See Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983.").

Therefore, Plaintiff's placement in administrative segregation as punishment for his suspected medication diversion does not implicate a protected interest to which due process protections attach, even presuming that the charges against him were false. Accordingly, Plaintiff's procedural due process claims will be **DISMISSED**.

### 5. Medical Care

Finally, the Court addresses Plaintiff's claims that he was denied prescribed and otherwise necessary medical treatment. It is not clear how long Plaintiff was housed in the Jefferson County Jail, so it is unknown whether some of his medical claims arose following his conviction. That distinction is immaterial to his medical-care claims, however, as under either the Eighth or Fourteenth Amendments, "[a] prison official's 'deliberate indifference' to a substantial risk of

serious harm to an inmate violates" an inmate's constitutional rights. *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)); *see also Poynter by and through Fernandez v. Shirley*, --- F.4th ---, 2026 WL 2641092, at *6–7 (6th Cir. Sept. 8, 2026) (applying the "subjective-knowledge requirement" set forth in *Farmer* to Fourteenth Amendment claims).

A deliberate indifference inquiry requires consideration of two separate elements. *Id*. at 839–40 (citations omitted). First, the objective element requires an inmate to show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 840 (quoting *Farmer*, 511 U.S. at 834). Second, the subjective element requires that "an official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id*. (alterations omitted) (quoting *Farmer*, 511 U.S. at 837). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff's medical-care claims are that he was not given his prescribed medication during the intake process at the Jefferson County Jail; that he was denied his inhaler at times; that Defendant Hubbard and other staff knew of Plaintiff's medical conditions but refused to provide treatment due to "Jail policies or medication restrictions"; and that Defendants Breeden, Roberson, Gabbard, Holbein, Hubbard, Jones, and Valji "knew of" Plaintiff's conditions "but failed to protect him or provide constitutionally adequate medical care" [Doc. 2 p. 7–9].

But Plaintiff does not identify any individual(s) who denied him his prescribed medication during the intake process or denied him access to inhalers at times. And although Plaintiff claims that various named Defendants knew of his medical conditions, he has not identified what discrete

(in)action each took and how that (in)action caused him constitutional injury. And Plaintiff must "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted). Therefore, Plaintiff's allegations are insufficient to state a viable deliberate indifference claim as to Defendants Breeden, Roberson, Gabbard, Holbein, Hubbard, Jones, and/or Valji, and claims against these Defendants will be **DISMISSED**.

However, liberally construing Plaintiff's complaint, he has stated a colorable claim that Defendant Ladonna Hubbard was deliberately indifferent to his need for medical care pursuant to Jail and/or Turnkey Health, LLC policies. Accordingly, the Court will permit Plaintiff's denial-of-medical-care claims to **PROCEED** against Ladonna Hubbard individually and against Jefferson County and Turnkey Health, LLC.

But the Court finds no process should issue as to the remaining Defendant, Sheriff Jeff Coffey. An individual-liability claim may proceed against Defendant Coffey only if Plaintiff alleges facts that permit the plausible inference that Defendant Coffey's own conduct violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Thus, constitutional liability cannot attach to Defendant Coffey solely based on his position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). There are no allegations against Defendant Coffey in Plaintiff's complaint. Thus, there are no facts asserted from which the Court can plausibly infer Defendant Coffey may be individually liable for any alleged violation of Plaintiff's constitutional rights.

Further, any official-capacity claims against Sheriff Coffey are properly dismissed as redundant to Plaintiff's claims against Jefferson County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Accordingly, all claims against Defendant Sheriff Coffey will be **DISMISSED**.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's first motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff has stated a colorable claim for the denial of constitutionally adequate medical care against Ladonna Hubbard individually and against Jefferson County and Turnkey Health, LLC;

5. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Hubbard, Jefferson County, and Turnkey Health LLC;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of entry of this order;

7. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed without further notice;

9. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

10. All other claims and Defendants are **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

s/Clifton L. Corker
United States District Judge



Case 1:26-cv-00269-DCLC-MJD Document 6 Filed 10/02/26 Page 12 of 12
PageID #: 49